FILED
2014 Sep-17  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DIANE MARIE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:13-cv-00560-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Diane M. Lewis, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Lewis timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Lewis was 58 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a college education. (Tr. at 32.) Her past work experience is as a financial analyst. (Tr. at 183.) Ms. Lewis claims that her bipolar disorder, which she has had since at least 1975, intensified and caused her to be disabled once she was hospitalized with manic symptoms on February 6, 2008. (Tr.

at 210, 135.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. Id. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional

capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Ms. Lewis meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 22.) He further determined Ms. Lewis has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's combination of bipolar and anxiety disorders are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found these impairments neither meet nor medically equal any of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26.) The ALJ did not find Ms. Lewis's allegations to be totally credible, and determined she has the residual functional capacity ("RFC") to perform less than the full range of medium work as defined by 20 C.F.R. Part 404.1567(c). (Tr. at 28.) The ALJ found she can lift 30 pounds occasionally and 20 pounds frequently, she can sit for 2 hours of an 8 hour workday, and she can stand or work for 6 hours of an 8 hour workday. The ALJ further found she can push, pull, stoop, climb ramps and stairs, and operate foot controls for 4 hours of an 8 hour workday; she can frequently balance and occasionally kneel and crawl, but must avoid any exposure to hazards such as moving machinery or exposure to unprotected heights, or even moderate exposure to excessive noise. Furthermore, the ALJ found Ms. Lewis can perform simple, routine, repetitive tasks with normal breaks, no fast-paced production requirements, simple work-related decisions, few, if any, and gradual changes in work setting, occasional judgment, and minimal interaction with the public. Finally, the ALJ found Ms. Lewis can be around co-workers throughout the day with occasional interaction with such coworkers. (*Id.*)

According to the ALJ, Ms. Lewis is unable to perform her past relevant work, she is an "individual of advanced age," and she has "at least a high school education and is able to communicate in English" as those terms are defined by the regulations.

(Tr. at 32.) The ALJ determined that transferability of job skills is not material to the issue in this case, because using the Medical-Vocational Rules as a framework supports a finding that Ms. Lewis was "not disabled" whether or not she has transferable job skills. (*Id.*) Based on the finding that Ms. Lewis has the RFC to perform less than the full range of medium work, the ALJ used Medical-Vocational Rule 201.25 as a guideline for finding there are a significant number of jobs in the national economy she is capable of performing, such as hand packager, assembler, and childcare worker. (Tr. at 32-33.) The ALJ concluded his findings by stating Ms. Lewis had "not been under a disability, as defined in the Social Security Act, from January 8, 2008, through the date of th[e] decision." (Tr. at 33.)

II.    Standard of Review

        This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See*

*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for " despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

　　Ms. Lewis alleges the ALJ's decision should be reversed and remanded for two reasons. First, she believes the ALJ failed to properly weigh the medical opinion

evidence of the physicians in the case. (Doc. 9 at 12.) Second, Ms. Lewis argues the ALJ failed to properly evaluate her credibility when determining whether she was disabled. (*Id.* at 19.)

Before addressing Plaintiff's claims, an overview of Plaintiff's medical history and her reported daily activities is warranted. Plaintiff has had bipolar disorder since she was 25 years old and has experienced several manic episodes. (Tr. at 48.) Despite her disorder, Plaintiff had a long career at Boeing, earning up to $90,000 per year as a financial analyst. (Tr. at 52.) In February 2008, Plaintiff had a manic episode due to stress at work. (Tr. at 50.) The episode occurred while she was cleaning out a storage unit with her husband which she says made her frustrated. (*Id.*) She was hospitalized for five days—from February 10, 2008 to February 15, 2008—because she was in a manic state, and presented symptoms including lack of sleep, disorganization, racing thoughts, and hypertalkativeness. (Tr. at 324.) After a brief period back at home, Plaintiff was readmitted to the hospital on February 23, 2008 and discharged March 3, 2008. (*Id.*) Since those hospitalizations, Plaintiff has not been back to the hospital, and she has consistently been stable on medication in the three years since her hospitalizations. (Tr. at 50.) Plaintiff testified that she routinely prepares lengthy meals, shops for "several hours" multiple times a week, reads novels

for "several hours" in one sitting, walks one to two miles multiple times per week, cleans, cares for two dogs, and has no problems getting along with others. (Tr. at 50-60.) Plaintiff and her husband also discussed other activities that they do such as boating, camping, going out to eat, going to concerts, traveling, and gardening. (Tr. at 29, 175-80, 213-28.) Plaintiff testified that she feels she cannot work because she does not know when she is going to have another manic episode, or what might trigger it. (Tr. at 52.) She says that while she is at home, she can choose whatever she wishes to do, such as garden or cook, but if she were to have a job, no matter whether skilled or unskilled, there would be things that were expected of her that she is not in control of, and she is worried that will trigger an episode. (Tr. at 55.)

A.    The Weight Given by the ALJ to the Medical Opinion Evidence

Ms. Lewis argues the ALJ improperly evaluated the opinions of the four physicians in this case, including her treating psychiatrist. The ALJ discussed extensively the weight he was giving to each of the physicians in this case: 1) Dr. Devabhaktuni, Ms. Lewis's treating psychiatrist, 2) Dr. Bilbrey, a psychologist who examined Plaintiff on March 5, 2011, at her attorney's request; 3) Dr. Smith, a consultative psychologist who examined Plaintiff on July 19, 2010 at the request of the Social Security Administration; and 4) Dr. Jackson, a state agency psychologist who

did not examine the plaintiff but reviewed her records.  The ALJ gave the greatest weight to the opinion of Dr. Jackson, while he gave little weight to the three other physicians' opinions.

      1.    Standard

As a general matter, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as " your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as " a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a " a physician, psychologist, or other

acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to discount the weight of a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v.*

*Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding "good cause" existed where the opinion was contradicted by other notations in the physician's record).

The Court must also be aware that opinions on topics such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors, "are not medical opinions . . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is concerned with the doctors' evaluations of Ms. Lewis's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing Ms. Lewis's RFC. *See, e.g.*, 20 C.F.R. § 404.1546©.

### 2.    Treating Source

Ms. Lewis first contends the ALJ erred in giving little weight to Dr. Devabhaktuni's opinions. (Doc. 9 at 13-14.) Dr. Devabhaktuni began treating Ms. Lewis for bipolar disorder in May 2007 and noted treatment through 2010. (Doc. 9 at 2.)   The ALJ discussed January, March, and June 2008 questionnaires that Dr.

Devabhaktuni filled out for Plaintiff's insurance, a May 2009 letter the doctor wrote to Plaintiff's attorneys, and a February 2011 questionnaire and letter he wrote to Plaintiff's attorneys.  In January 2008, Dr. Devabhaktuni stated that Ms. Lewis was unable to work due to stress and her inability to focus. (Tr. at 424-25.)  After Plaintiff was hospitalized in February 2008, Dr. Devabhaktuni increased her medication. (*Id.*) In March 2008 and April 2008, Dr. Devabhaktuni reported in assessment updates that Ms. Lewis remained unable to return to work. (Tr. at 427-28, 431.) In the May 2009 letter, Dr. Devabhaktuni stated Ms. Lewis " continue[d] to be unable to work," and that she was " very likely" to experience another manic episode if she " continued to work or was placed in any similar environment." (Tr. at 492.)  He noted that since Plaintiff had been released from the hospital in February 2008, she " has improved to where she is no longer showing signs of mania, however, there is no indication there would not be a recurrence of a manic episode if she were to return to work." (Tr. at 492.)  He noted that she should not return to work due to the " risk" of another manic episode. (Tr. at 493.)  His February 2011 letter to Plaintiff's lawyers is almost identical to his May 2009 letter. (Tr. at 570-71.)

The ALJ exhibited good cause to give little weight to Dr. Devabhaktuni's opinions. As an initial matter, the ALJ was not required to accept Dr. Davabhaktuni's

opinion that Plaintiff could not work, because those types of opinions from doctors are not entitled to any particular deference, as that is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). Even if the opinion that Plaintiff could not work was entitled to deference, Dr. Devabhaktuni was opining that Plaintiff could not return to her former job as a financial analyst, but he does not address whether Plaintiff could perform other work, such as the unskilled medium-level work outlined in the ALJ's RFC assessment. Aside from that, Plaintiff argues that the ALJ erred in giving little weight to Dr. Devabhaktuni's opinions because the fact that she remains stable while unemployed does not indicate that she would be able to function in a competitive job. The ALJ specifically addressed this concern, stating that:

> The essence of this case, and what I do not accept, is claimant's allegation, supported by Dr. Devabhaktuni's report, that claimant cannot work because she would decompensate and experience mania under the stress of work. Though this did happen in early 2008 ostensibly due to stress from claimant's work activity, claimant was working 54 hour work weeks as a financial analyst in the aerospace industry. (Exhibit 5E). This is highly stressful work activity which claimant was able to perform for nearly 25 years despite a long history of bipolar disorder and decompensation under these circumstances does not prove that claimant would experience similar decompensation with the low-stress work parameters outlined in my residual functional capacity finding.

(Tr. at 29.) Further, the ALJ noted that Dr. Devabhaktuni's assessments contradicted his own treatment notes about Ms. Lewis's improved condition after her

hospitalization, in which he noted that she was generally stable and "doing well" in many instances, and Ms. Lewis's ability to perform substantial daily activities in both low-stress and more stressful environments. (Tr. at 495-500, 55-58.) Additionally, the ALJ noted that Dr. Devabhaktuni's opinions that Plaintiff would have problems carrying out simple instructions and substantial difficulty with interaction was contradicted by the statements of Ms. Lewis and her husband that "she could carry out simple instructions and was generally able to interact well with others." (Tr. at 31.) The ALJ noted that Plaintiff had been generally stable since early 2008 while performing substantial daily activities in an albiet low-stress home environment, but also in more stressful situations such as attending concerts and sporting events. (Tr. at 31.) In sum, because Dr. Devabhaktuni's opinions were in some instances contradicted by his own treatment notes and generally only addressed Ms. Lewis's mental state immediately after decompensating under high stress work conditions and did not address whether she could function in a lower-stress work environment, the ALJ had good cause to give little weight to Dr. Devabhaktuni's opinions.

### 3.  Examining Sources

Ms. Lewis also argues the ALJ erred in giving little weight to Dr. Bilbrey's March 2011 assessment, which he submitted after examining Plaintiff at her attorneys'

request.  During Dr. Bilbrey's mental status examination the only deficient finding was noted to be some difficulty concentrating.  (Tr. at 573.)  Dr. Bilbrey noted that Ms. Lewis had slow psychomotor skills but would be capable of reading to others, interacting and communicating effectively, and would have adequate judgment and reasoning abilities in non-stressful situations.  (Tr. at 574.)  He recommended she avoid stressful situations.  (Tr. at 576.)  Despite these mild findings, he then completed an assessment finding markedly limited impairments in Ms. Lewis's ability to function, such as concentrating for extended periods, sustaining an ordinary routine, or interacting appropriately with others without distracting them.  (Tr. at 580-82.)

Substantial evidence supports the ALJ's decision to give Dr. Bilbrey's assessment little weight.  The ALJ noted that despite the fact that Dr. Bilbrey examined Ms. Lewis once in 2011, he reported that Ms. Lewis's limitations had existed since 1975, which is inconsistent with the fact that she was able to perform demanding, high-stress work in her 33-year career lasting until 2008.  (Tr. at 31, 584.)  Further, the ALJ found that Dr. Bilbrey's observations of Ms. Lewis's cognitive speed were inconsistent with Dr. Smith's observations of the same, discussed *infra*.  (Tr. at 31, 517, 573-74.)  As the ALJ noted, despite Dr. Bilbrey's assessment that Ms. Lewis

was markedly limited, Ms. Lewis's own statements indicated that, after her hospitalization in 2008, she has been able to maintain concentration on tasks for extended periods of time, sustain an ordinary routine, and interact well with others. (Tr. at 31, 167-74.)  She described daily activities such as shopping for hours, reading novels, and lengthy meal preparation.  (Tr. at 31.)  Ms. Lewis relies on *Lewis v. Callahan*, 125 F.3d at 1441, to argue that her ability to perform "everyday activities of short duration, such as housework" does not contradict Dr. Bilbrey's assessment. (Doc. 9 at 17.) However, *Lewis v. Callahan* concerned an individual with heart difficulties who required frequent rest throughout the day, and not an individual with an alleged mental disability.  *Lewis*, 125 F.3d at 1438. While "participation in everyday activities of short duration, such as housework or fishing," may not automatically disqualify a claimant from disability or be inconsistent with a finding of heart-related limitations, *id.* at 1441, Ms. Lewis's ability to sustain an ordinary routine, interact appropriately with others, and maintain concentration for hours at a time while reading novels directly contradicts Dr. Bilbrey's one-time assessment of her mental health.  Substantial evidence supports the ALJ's conclusion that Dr. Bilbrey's one-time assessment was entitled to little weight.

Ms. Lewis also contends the ALJ did not give sufficient weight to the opinions

of the consultative examining psychologist, Dr. Smith, who provided an assessment on July 19, 2010 at the request of the Social Security Administration. (Doc. 9 at 18.) Dr. Smith noted that Plaintiff was polite and cooperative, at ease during the interview, and had appropriate behavior.  (Tr. at 517.)  Plaintiff was able to initiate and maintain eye contact, had a euthymic mood, and appropriate affect.  (Tr. at 517.)  Her speech was normal in rate and tone and there were no significant difficulties with articulation or prosody.  (*Id.*)  She was alert and oriented to time, place, person, and situation, with thought content and processes within normal limits, and no indication of auditory or visual hallucinations, bizarre mentation or abnormal fears or obsessions.  (*Id.*)  Despite these mild clinical findings, Dr. Smith's conclusion was that Plaintiff's overall level of social and adaptive functioning was severely impaired and her ability to maintain gainful full-time employment is severely impaired by her chronic psychiatric conditions.  (Tr. at 18.)

Substantial evidence supports the ALJ's decision to give little weight to the opinion of Dr. Smith.  While Ms. Lewis again argues that her ability to engage in daily living activities does not demonstrate ability to engage in work-related activities, her ability to independently perform substantial activities of daily living directly contradict Dr. Smith's opinion that her " overall level of social and adaptive functioning appears

to be significantly impaired." (Tr. at 30, 518.)  Further, the ALJ noted that Dr. Smith's assessment was too severe and was inconsistent with Dr. Smith's own "generally unremarkable objective examination findings," such as that Ms. Lewis was "polite and cooperative" during the evaluation, that her behavior, dress, and eye contact were "appropriate," that she "reported that she sleeps well with her medication," and her "[t]hought content and processes were within normal limits," and "[h]er insight and judgment [were] good." (Tr. at 30, 517.)  It should be noted that the ALJ did find that Plaintiff had a restricted ability to interact and persist given her apparent sensitivity to stress and decreased cognitive speed and concentration as reported by Dr. Smith. (Tr. at 30.)  Substantial evidence supports the ALJ's decision to give little weight to Dr. Smith's opinions.

### 4.    Non-Examining Source

The ALJ gave the greatest weight to the opinions of Dr. Jackson, a state agency psychologist who reviewed Plaintiff's medical records and provided an opinion on behalf of the Social Security Administration.  The ALJ found Dr. Jackson's July 2010 assessment to be "well-supported and most consistent with the record." (Tr. at 30, 521-38.) Ms. Lewis in her brief did not address the weight the ALJ gave to Dr. Jackson's opinion, except to say that it was not entitled to greater weight than the

opinions of the other physicians. (Doc. 9 at 13.) Dr. Jackson noted that Plaintiff would have moderate difficulty with complex instructions, but could remember and understand short instructions. (Tr. at 537.) She also noted that she had moderate difficulty with sustaining attention for two hours at a time on complex tasks but could maintain attention for two hours at a time on simple tasks. (Tr. at 537.) Dr. Jackson assessed Plaintiff as only being able to appropriately handle casual and infrequent contact with the general public and co-workers. (Tr. at 537.) Dr. Jackson noted that, given Plaintiff's difficulties, she could be taxed by others and proximity to others should not be intensive or prolonged, and any feedback should be positive. (Tr. at 537.) Dr. Jackson also stated that Plaintiff would have problems with unpredictable or constant changes in a work setting and should have changes presented gradually and infrequently. (Tr. at 537.)

Dr. Jackson's opinions are consistent with what Plaintiff and her husband reported as her own capabilities. Plaintiff reported she could follow short, simple instructions, could not handle changes in routine well, and could concentrate for several hours on a novel or movie. (Tr. at 172-74, 213-20.) Her husband reported she could follow written or spoken instructions if she understands them, that she could not handle sudden changes but gradual changes were okay, and that her attention span

varied depending on the task.  (Tr. at 180-82, 221-28.)  Nothing in the regulations prevents an ALJ from affording great weight to an opinion from a state agency non-examinining source, when that opinion is consistent with the record as a whole. Indeed, state agency psychologists are highly qualified experts in Social Security disability evaluation.  20 C.F.R. § 404.1527(e)(2); SSR 96-6p.

Because the ALJ clearly articulated valid and proper grounds for the weight given to each physician's opinion, the Court finds the ALJ properly evaluated the medical opinion evidence.

B.      The ALJ's Evaluation of Ms. Lewis's Credibility

Ms. Lewis contends the ALJ failed to properly evaluate her credibility in regards to her subjective complaints of symptoms and limitations. (Doc. 9 at 20.) Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, " [t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise

to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, " 'the implication must be obvious to the reviewing court.' " *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.*

The ALJ in this case found Ms. Lewis had an underlying impairment that could reasonably be expected to cause the alleged symptoms, and also that Ms. Lewis and her husband's "allegations regarding [her] symptoms and limitations are largely

consistent with medical evidence and one another, and are thus generally credible."
(Tr. at 28-29.)   Ms. Lewis disagrees, however, with the ALJ's rejection of her
allegation that she could not work without experiencing mania from job-related stress.
(Doc. 9 at 20.)

Ms. Lewis first claims the ALJ's use of "template" language is insufficient to
support the finding. (Doc. 9 at 20-21.) She cites to *Bjornson v. Astrue*, 671 F.3d 640,
645-46 (7th Cir. 2012), arguing that the "language used by the ALJ in this case [is]
insufficient." (Doc. 9 at 20.) While the Seventh Circuit criticized in dicta the use of
"boilerplate" language in the introduction of an ALJ's findings, it reversed the case
because the ALJ did not provide a proper credibility analysis with valid reasons for
rejecting the plaintiff's credibility. *Bjornson*, 671 F.3d at 646-49. Here, the ALJ did
provide such analysis and the use of "boilerplate" language to introduce that section
of the findings does not discredit the ALJ's reasoning. (Tr. at 28-29.)

The ALJ in this case found Ms. Lewis's allegation that she was unable to work
without decompensating under stress is unsupported by the medical evidence and
contrary to Ms. Lewis and her husband's own statements about her ability to perform
substantial activities of daily living, get along with others and with authority figures,
follow short instructions, and handle changes that were gradually introduced. (Tr. at

167-74, 181.) Ms. Lewis claims these activities are insufficient to show she can " mentally withstand any stress or pressure[] in a competitive work environment." (Doc. 9 at 21.) The ALJ, however, specifically addressed this argument by noting that, although Ms. Lewis may be unable to perform highly stressful work activity as she did in early 2008, there is no indication she would decompensate in a low-stress work environment or " normal work atmosphere." (Tr. at 30.) The ALJ noted that Plaintiff had a significant history of bipolar disorder including hospitalizations, that this was precipitated by work stress, that Plaintiff was taking medication, and that her treatment notes did not report significant complaints of medication side effects, but noted mental slowing due to medication. (Tr. at 29.) Essentially, the ALJ found Plaintiff to be generally credible regarding her symptoms and limitations, but found that even with Plaintiff's symptoms, she was still capable of performing low-stress work within the parameters defined in the ALJ's RFC determination. (Tr. at 29.)

Because the ALJ clearly articulated the reasons for partially discrediting Ms. Lewis's testimony based on the entire record in accordance with Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996), the Court finds the ALJ properly evaluated Ms. Lewis's credibility.

IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Lewis's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 17th day of September 2014.

L. Scott Coogler
United States District Judge
[160704]